Sohaila Sagheb, Esq.          SBN 144202
Sohaila.sagheb@dracupandpatterson.com
**DRACUP & PATTERSON, INC.**
270 N. El Camino Real, Suite 510
Encinitas, California  92024-2874
Telephone: (833) 221-2990

Attorneys for Plaintiff P&T MULTIMEDIA SERVICES, LTD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| P&T MULTIMEDIA SERVICES, LTD,<br><br>                              Plaintiff,<br><br>v.<br><br>RETHINK FINANCIAL, INC., a Delaware Corporation, COORAEZ KESHVANI, an individual, SEAN CAFFEY, an individual, RUDY ROMA, an individual, and DOES 1-20,<br><br>                              Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF CONTRACT;**<br>2) **FRAUD;**<br>3) **VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);**<br>4) **CONSTRUCTIVE FRAUD;**<br>5) **CONVERSION;**<br>6) **NEGLIGENCE.**<br><br>**PLAINTIFF'S REQUEST FOR TRIAL BY JURY** |

Plaintiff complains and alleges:

1.      Plaintiff P&T MULTIMEDIA SERVICES, LTD (P&T) is and at all time alleged in this action was a corporation with its principal place of business located in the City of Famagusta, Country of Cyprus.

2.      Defendant RETHINK FINANCIAL, INC. (ReThink), is and at all time alleged in this action was a Delaware Corporation doing business in the state of California. ReThink's registration with the Financial Crimes Enforcement Network of the Department of the Treasury reflects that Defendant does business in all fifty states, including in the state of California. The Director of Rethink, Defendant COORAEZ KESHVANI, advertises ReThink as operating in Los Angeles, California.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

3.      Defendant COORAEZ KESHVANI (Keshvani) is and at all times alleged in this action was an individual doing business in the state of California as a Director and Manager of ReThink, in control of operating and directing the affairs of ReThink.

4.      Defendant SEAN CAFFEY (Caffey) is and at all times alleged in this action was an individual residing and doing business in the County of Los Angeles, State of California as a manager and operator directing the affairs of ReThink.

5.      Defendant RUDY ROMA (Roma) is and at all times alleged in this action was an individual residing and doing business in the County of Los Angeles, State of California as a manager and operator directing the affairs of ReThink.

6.      Plaintiff is ignorant of the true names of Defendants DOES 1 through 20, inclusive, and has therefore sued them by the foregoing names which are fictitious, and is informed and believes and thereon alleges that each of said defendants claims an interest in the matters hereinafter described and which is the subject of this action, or is somehow obligated to Plaintiff hereunder, and Plaintiff asks that when their true names are discovered this Complaint may be amended by inserting their true names in lieu of said fictitious names, together with apt and proper words to charge them.

7.      Plaintiff is informed and believes and thereon alleges that each of the named and Doe defendants are, and at all times herein mentioned were, the employees, agents, conspirators, servants, stakeholders, shareholders and/or partners of the other and, in committing the acts as alleged herein, were acting within the course and scope of such agency, conspiracy, service, employment and/or partnership. Each Defendant took affirmative steps to further the joint conspiracy alleged herein.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the present matter pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of the country of Cyprus and the Defendants are citizens of the United States and the amount in controversy exceeds $75,000.00 USD.

9.     This Court also has subject matter jurisdiction over the present matter pursuant to 18 U.S.C. § 1964 which provides civil remedies related to violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and allows the District Courts to prevent and restrain violations of the RICO Act.

10.     This Court has personal jurisdiction over Defendants, because each Defendant has minimum contacts with the forum state, rendering exercise of jurisdiction by the District Courts of California over these Defendants proper.

## FACTS COMMON TO ALL COUNTS

11.     Defendants, ReThink and its employees or agents, the individual defendants, engaged in activities, or their activities affected, or conspired to engage in activities which affected interstate and/or foreign commerce. Defendants' conduct or participation in the conduct of ReThink, directly or indirectly, and the affairs of ReThink, directly or indirectly, constituted a pattern of criminal and fraudulent activity which constituted racketeering activity.

12.     Defendants ReThink and its employees or agents, the individual defendants, are in the business of credit card payment processing for merchants such as Plaintiff P&T. Effectively, ReThink represented that like other processing entities, ReThink would obtain credit card transactions from merchants such as P&T and processes same for a fee. Once the payment is processed, ReThink returns funds to the merchant, in this case P&T, minus ReThink's fee.

13.     P&T is a business entity providing gaming services. Customers of P&T pay for said services using credit cards. In terms of credit card transactions, payment for gaming services is associated with greater risk than, for example, processing credit card transactions at a grocery store. As such, there are banks that are willing to take on credit card processing traffic for gaming merchants and those who are not.

14.     Merchants such as P&T do not deal directly with the banks processing the credit card traffic but instead with business entities established for the purpose of taking the credit card traffic from the merchant, here P&T, sending it to the bank, here Evolve Bank (Evolve) and then JP Morgan Chase Bank (Chase), and when the transactions are

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

processed returning to the merchant the funds generated by the transactions, minus the processing fee, here charged by ReThink.

15.     P&T was introduced to ReThink and Keshvani through a mutual banking / credit card processing acquaintance.

16.     Once introduced, Keshvani sought to win over P&T's business for his company, ReThink. P&T was processing between $40,000 USD to $65,000 USD a day in credit card transactions.

17.     Keshvani represented to P&T that he had in-place a Payment Facilitator Agreement with Evolve whereby ReThink could onboard any merchant and provide unique Merchant IDs (MIDs) for payment processing online. The unique MID would permit Evolve to process P&T's transactions separate from that of other merchants even if both merchants were ReThink's customers.

18.     Defendants specifically represented that their sole intent was to process all of P&T's submitted credit card transactions for the purpose of returning to P&T the funds generated by those transactions minus ReThink's fees.

19.     Based on the representations of Defendants ReThink, Keshvani, Roma and Caffey on or about November 22, 2022 P&T entered into a Merchant Agreement with Defendant ReThink a true and correct copy of which is attached hereto as Exhibit A and the salient terms of which were as follows:

A.     *Our Role.* ReThink is a Money-Service-Business (MSB) utilizing a Distributed Ledger Technology (DLT) payment method in exchange for goods or services you sell to your shoppers or another type of customer (the "Customer" or "Cardholder"). … ReThink is acting as an authorized agent for the limited purpose of accepting and processing Credentials from Customers on your behalf for Transactions.

B.     *Your Authorization.* You authorize us to act as your agent for the limited purposes of holding, receiving, and disbursing funds on your behalf in connection with the Payment Services. Based on your authorization, we may

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

generate an electronic funds transfer to settle the proceeds of each Transaction that you authorize, less any applicable Fees ("Fees").

    C.    ReThink represents and warrants to the other party that:

        27.1.1 ReThink is duly organized and validly existing under the laws of the country, state, and/or province of its formation, and has the full power and authority to conduct businesses as well as to execute this Agreement and perform its obligations thereunder;

        27.1.3 it will perform all services in a professional and workmanlike manner and in accordance with prevailing industry standards;

        27.1.4 it will (and it will procure that its affiliates will) obtain, hold, and maintain all filings, licenses, permits, and consents as may be required pursuant to any applicable laws in order for it to conduct its business and perform its obligations under this Agreement;

        ***27.1.5 it will not engage in any unfair, deceptive, or abusive acts or practices when providing the Payment Services***; …

20.    Rethink's payment processing for P&T commenced at the end of December 2022 and carried on through January 2023 with Evolve. Settlements were a bit messy (late, mistakes were made) but essentially completed with errors timely corrected when pointed out.

21.    Keshvani began praising P&T's traffic and asked for more. Keshvani told P&T that he has another MID and banking relationship with Chase. Keshvani claimed that his set up with Chase was the same as with Evolve and that P&T could grow traffic on both platforms.

22.    Around the end of January, 2023 Defendants told P&T that P&T's funds at Evolve had been blocked because another merchant, not P&T, had received VISA

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

fines for alleged violations by a merchant named "Empire". At this time, roughly 200,000 EUR[1] remained at Evolve, along with the Rolling Reserve of 57,428.12 EUR[2].

23.    Keshvani instructed P&T to move all of its transaction traffic to Chase which P&T did. In the meantime, P&T had transactions pending at Evolve. Keshvani told P&T not to worry about those transactions which would shortly clear but not to send any further transactions to Evolve.

24.    P&T continued to process credit card transactions with Chase for the next few weeks at which time Keshvani told P&T that Rethink cannot settle the funds from Evolve as the funds were frozen for 6 months.

25.    When this issue arose P&T noticed that the MID on the Chase platform was no longer named P&T but Rethink. A principal of P&T tested the processing solution on the Chase platform with his own credit card to determine the flow of funds. P&T's principal used a personal credit card to pay P&T on the Chase platform. Through this process P&T learned that the MID on the Chase platform was not P&T or even ReThink, but a entity called Arccus Nova. Based on its web page, Arccus Nova[3] was a photography website tied to Keshvani and his mother, Rosemeena Keshvani.

26.    For the sake of clarity, P&T alleges that unbeknownst to P&T, Defendants had changed the MID on the Chase processing platform from P&T as the merchant to Arccus Nova, an entirely different merchant owned and/or operated by Defendants. Arccus Nova was receiving the funds P&T was processing through ReThink's Chase platform. Chase was sending the processed transaction funds to Arcuus Nova, not P&T. The website for Arcuus Nova has since disappeared.

27.    P&T started asking questions but Keshvani told P&T that the transition from Evolve to Chase had been burdensome; that yes, there were hiccups, but there was nothing to worry about as Keshvani and his staff Caffey and Roma had all matters

---

[1] Based on the exchange rate on 6/12/2024, $216,170.60 USD.

[2] Based on the exchange rate on 6/12/2024, $62,071.36 USD.

[3] https://www.arccusnova.com; arccusnova@gmail.com

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

in hand. P&T was heavily invested and allowed Defendants until the next settlement date, which was once a week, to straighten this affair. At this juncture P&T continued to process between $40,000 USD to $65,000 USD per day.

28.    Then another problem presented. By way of background: as P&T was processing European traffic on USA MIDs at Chase, the Bank was required to implement 3DS for each payment, a mandatory user confirmation for each payment.

29.    NMI is the payment gateway Rethink used to provide the payment processing service. NMI (https://www.nmi.com/) is one of the most utilized payment gateways in the United States. Technologically speaking, P&T gateway connected to NMI gateway (via Rethink) and then connected to Evolve and Chase in order to send each other data / information for the card processing.  (P&T → Rethink via NMI → Evolve/Chase)

30.    Plaintiff was told by Defendants that there was a 40,000 EUR error within Chase and that the Plaintiff was settled funds out of pocket rather than receiving settlement funds from the card processing. Defendants attributed the error that allegedly required out-of-pocket settlement to a 3DS error on Chase's side. Plaintiff instructed Defendants in no uncertain terms not to 'rerun' the transactions from past users, which is a function within the NMI gateway. A rerun would mean past transactions which were authorized by 3DS can once again debit the cardholder. Plaintiff clearly explained to Defendants that reruns would result in chargebacks from cardholders, and Plaintiff's MID would be jeopardized. Plaintiff even offered to cover the difference so as not to provoke the users and bring scrutiny from customers or Chase.

31.    From the cardholder's perspective, the payment is authorized, money is taken out of the consumer's account. Then, without explanation, the money is returned to the cardholder, and then a week later the money is taken out again. Naturally the consumer will suspect fraud or at least suspect that an unauthorized user is accessing their funds. The consumer then contacts the bank and the bank starts performing

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

chargebacks. A typical chargeback ratio on a MID is 3% of total volume. If it is more then the Bank will investigate the MID and block funds.

32.     Here, depositors in the sum of 40,000 EUR were inputting their cards for payment to P&T via NMI/Rethink via the Chase MID, the transactions were authorized, the user was subject to 3DS and confirmed the transaction, and funds were written off the users card. However, due to a technical error the funds were credited back in a few days. Contrary to Plaintiff's instructions Keshvani did the rerun in a week and basically debited the amounts again. The cardholders deemed the transactions fraudulent and started to chargeback which in turn brought scrutiny from Chase.

33.     Plaintiff alleges that Defendants' only incentive to rerun the transactions, despite specific instruction from Plaintiff not to do so and Plaintiff's offer to cover the difference was as follow: Defendants intended to embezzle as much of Plaintiff's funds as possible before Plaintiff realized what was happening. Rerunning the transactions would initially return the funds outstanding. Since Defendants never intended a long term relationship with Plaintiff and entered the agreement intending to steal as much from Plaintiff as possible before Plaintiff realized that the relationship was seeped in fraud, there was no downside to Defendants in rerunning the transactions.

34.     The chargebacks that followed were ONLY due to the reruns performed by Keshvani to further the embezzlement of Plaintiff's funds.

35.     By this point P&T did not know how much money had been diverted to Arccus Nova and Rosemeena Keshvani and how much was being held by Chase.

36.     After both Chase and Evolve had allegedly frozen P&T's assets[4], Keshvani became more and more difficult to get a hold of. The sums frozen and blocked by Evolve for 6 months were in the approximate amount of $200,000 EURO and Chase in the approximate amount of $583,313.08 EURO.[5]

---

[4] Defendants' representations that the funds were frozen by Evolve and Chase is confirmed only by Defendants and thus may not be true. There may never have been a freeze by the banks.

[5] Based on the exchange rate on 6/12/2024, $630,476.47 USD.

37.    P&T was assured by Keshvani and ReThink's other agents that P&T's money would be returned. Defendants asked P&T to be patient and assured P&T that the money would soon be returned.

38.    In April 2023 Keshvani was still telling P&T that "[t]he solution to the blocked funds is to wait the 6 months the bank has required to release funds. As mentioned before there is no way around this."

39.    After ignoring dozens of calls, texts and emails from P&T Keshvani sent an email on August 8, 2023 stating "Chase has set the process for the final review to release funds. They will have final decisions this Friday. No more updates on Evolve still."

40.    In September 2023 P&T retained counsel in Cyprus to resolve the matter with Defendants. Defendants' Compliance and Legal Department responded by email on 9-22-2023 stating "We are reviewing your information below and we will respond within two business days (Tuesday). … Our response Tuesday will be a clear action plan on what is needed (if anything) to reconcile the outstanding amounts, complete payments, and a schedule." Thereafter ReThink's Compliance and Legal Department made various demands for notarized documents, which were complied with by P&T. But each time P&T complied with a notarization or certification request ReThink would put up another barrier to returning the funds. Eventually ReThink's demands were impossible to comply with because, for example, the notarizations sought did not exist in Europe or were limited to the United States. In these communications ReThink never took the position that P&T's funds were being held by either Evolve or Chase. Indeed there was tacit recognition that ReThink had P&T's funds but would only release those funds if ReThink performed certain tasks. The tasks were intentionally impossible for P&T to comply with. Efforts to fashion compliance with ReThink's demands, all of which exceeded the scope of the Agreement, were to no avail. In the end, Defendants were not even willing to provide a reconciliation.

41.    To date, P&T has not been reimbursed the funds for credit card transaction processed by Defendants through either Evolve or Chase.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

42.     Defendants have completely stopped communications with P&T.

43.     At various junctures, Defendants, through Keshvani have admitted that Defendants owe P&T the money.

44.     After having been induced to rely not only on the terms of the Agreement but also on the persuasion by Defendants regarding their honesty, integrity, trustworthiness, honor, credibility, acclaim, capability, power, facility, talent, skill, expertise P&T submitted to Defendants for processing hundreds of thousands of credit card transactions totaling approximately (current XE rate):

Unsettled volume - 738'313.08 EUR[6]

Rolling Reserve - 57'428.12 EUR[7]

Total - 795,741.20 EUR[8]

45.     Despite multiple demands from Plaintiff's agents, Defendants failed to return to P&T any portion of the transaction submittals identified above.

46.     Investigation since November 2023 has disclosed that there are at least three other businesses that have suffered losses from credit card processing transactions with ReThink in the same or similar manner as described herein.

## FIRST CAUSE OF ACTION
## BREACH OF WRITTEN CONTRACT

(Plaintiff against Defendants ReThink and DOES 1-10)

47.     Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

48.     An executed and written contract existed between P&T and Defendant ReThink, a true and correct copy of which is attached hereto as Exhibit A.

49.     P&T performed all of the terms of the contract.

---

[6] Based on the exchange rate on 6/12/2024, $798,007.91 USD.

[7] Based on the exchange rate on 6/12/2024, $62,071.35 USD.

[8] Based on the exchange rate on 6/12/2024, $860,079.26 USD.

50.     Defendant ReThink breached the contract and each of the warranties recited by paragraph 12C by failing to return any portion of the funds generated by795,741.20 EUR worth of credit card transactions submitted by P&T to ReThink for the sole purpose of processing.

51.     P&T is damaged in the amount of 795,741.20 EUR that P&T has lost via transactions submitted to Defendants for processing but which Defendants fraudulently and criminally misappropriated. The transactions are no longer available to P&T for submission to another credit card processing center for processing and payment of funds to P&T.

52.     P&T has also been damaged to the extent it has had to retain attorney's and incur other costs in the recovery of 795,741.20 EUR and is entitled to an award of attorney's fees and costs per the terms of the Agreement.

## SECOND CAUSE OF ACTION
## <u>FRAUD</u>

(Plaintiff against Defendants Rethink, Keshvani, Caffey, Roma Does 1-10)

53.     Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

54.     The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

55.     Defendants Rethink, Keshvani, Caffey, Roma misrepresented their intent to process all of P&T's submitted credit card transactions for the sole purpose of returning to P&T the funds generated by those transactions minus ReThink's fees.

56.     Defendants' intent to defraud is evidenced by the fact that Defendants had a preexisting arrangement with Keshvani's mother Rosemeena Keshvani and a business entity, Arccus Nova, created or existing for the purpose of diverting P&T's transaction funds.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

57.     Defendants' intent to defraud is evidenced by the fact that Defendants moved the processing platform from Evolve to Chase without disclosing to P&T that the processing through Chase was not tagged to P&T under a MID specific to P&T. Defendants never told P&T that the MID of Arcuus Nova or Keshvani's mother Rosemeena Keshvani, or anyone other than P&T, would ever be involved. To the contrary, Defendants' representation was that the processing belonged to ReThink and the MID identified P&T.

58.     Defendants' misrepresentations and concealments were made in late 2022 and 2023, extending through October, 2023 during which time Defendants continued to represent that ReThink intended to reconcile P&T's account while concealing the fact that P&T's funds had been diverted to Arcuus Nova and/or Keshvani's mother Rosemeena Keshvani.

59.     What was misrepresented and/or concealed: Defendants pressured P&T to move its credit card traffic to Chase even before Evolve froze some of P&T's transactions. Defendants told P&T that its Processing Agreement with Chase was the same as with Evolve and that P&T's funds were secure with a MID specific to P&T and a Processing Agreement between ReThink and Chase. Defendants' representations were untrue and Defendants concealed from P&T that on the Chase platform P&T's submission of credit card transactions were processed in favor of Defendants' insiders, Arcuus Nova or Rosemeena Keshvani.

60.     Nor have Defendants ever explained why Evolve would have frozen P&T's funds based on a transgression by "Empire". Based on the lack of a cogent explanation as to Evolve's freezing P&T's funds, P&T alleges that Evolve either never froze P&T's funds or that if it did, the processing stay was short and ReThink received the funds from Evolve and failed to tender same to Plaintiff based on false reasons created by ReThink to defraud Plaintiff.

61.     At least as of the time that Defendants rerouted P&T's transactions from Evolve to Chase they knew that P&T's credit card transactions would be processed only for the benefit of Defendants. All of Defendants' representations from that time

on were knowingly false and included but were not limited to the following: (1) that rerouting to the Chase platform for the processing of P&T's transactions was for P&T's benefit; (2) that with the Chase platform the processing would be performed as it had been at Evolve bank, for the benefit of P&T; and (3) that ReThink was working on returning P&T's funds from both Evolve and Chase.

62.     P&T relied on Defendants' representations which were given both verbally and in writing and based on the contract that had been signed with warranties provided. Moreover, some of the transactions had cleared and while never trouble free there was no reason not to rely on the verbal and written agreement that Defendants would ***not engage in any unfair, deceptive, or abusive acts or practices when providing the Payment Services***; …

63.     P&T could not have known that the purported "back up" bank, Chase, would never route processed funds to P&T because Defendants had set up the flow of money to themselves rather than to P&T. Also, by the time that Defendants told P&T to use the Chase platform Defendants were processing between $40,000 USD to $65,000 USD per day. That meant that by the time P&T became suspicious about what was going on, it was likely that Defendants would have stolen about a week's worth of P&T's money and indeed approximately 795,741.20 EUR was lost to Defendants before P&T realized what was happening.

64.     Despite initially engaging with P&T under the pretense that it was Chase that continued to error and failed to timely process transactions, Defendants never intended to return any substantial submission of transaction funds to P&T. Defendants engaged with P&T to delay P&T's discovery of the fraud because all along Defendants knew that they had set up the Chase processing transactions with a MID for Arcuus Nova or Rosemeena Keshvani, not for P&T. It was only P&T that did not know this important fact until its principal ran his credit card through P&T. But even after learning this information it was not clear why Defendants had created the MID for Arcuus Nova or Rosemeena Keshvani or whether through banking error the MIDs had simply become confused. In a telephone conversation between Plaintiff's agents, a

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

third party facilitator and Defendant Keshvani, Keshvani assured Plaintiff that the rerouting of the funds away from P&T was a bank error that would be looked into.

65.     Despite continuing problems and issues Defendants continued to induce P&T's reliance on their systems, telling P&T that the problems would shortly be resolved, that the issues were temporary, that Defendants were working with the banks and a myriad of other excuses for why the transactions were not fullyreturning P&T's money.

66.      As a result of the fraudulent conduct of Defendants, P&T has been harmed in a sum to be proven at trial.

67.     Defendants' acts were malicious, oppressive and fraudulent carried out with conscious disregard for the rights and safety of P&T. As such, punitive damage must be imposed against Defendants.

### THIRD CAUSE OF ACTION
### <u>VIOLATION OF RACKETEER INFLUENCED AND</u>
### <u>CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962 (c)</u>
(Plaintiff against all Defendants)

68.     Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

69.     This claim is brought within four-years of the execution of the contract pursuant to which P&T's loss occurred. RICO claims are subject to a four-year statute of limitations measured from the date that P&T discovered or should have discovered the injury. 18 U.S.C. § 1962. P&T discovered the injury in this case after 2023.

70.     Defendants violated Penal Code § 532 which prohibits theft by false pretenses, defined as defrauding someone of money or property by way of false promises or representations.

71.     Defendants violated Penal Code § 484 (Larceny) which prohibits theft of personal property entrusted by false pretenses or fraud.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

72.     Defendants violated Penal Code § 503 (Embezzlement) which is the commission of fraud in order to take property entrusted to Defendants.

73.     Defendants are employed by or associated with an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs through a pattern of racketeering activity (RICO).

74.     A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Defendants herein, ReThink, Caffey, Keshvani, Roma, Arcuus Nova, Rosemeena Keshvani and DOES 1-20 constitute a RICO enterprise.

75.     Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs. 18 U.S.C. § 1962(c).[9] The RICO Defendants participated in the operation or management of the enterprise. Each of the Defendants named herein performed functions essential to the management and operation of ReThink, directing the enterprise's affairs and the theft of P&T's funds. For example, Defendants knew that Arcuus Nova and/or Rosemeena Keshvani were improperly receiving P&T's money and were set up to receive funds they did not own and had no right to possess; Keshvani, Roma, Caffey knew that they never set up a MID for P&T at Chase or that they changed the MID from P&T to Arcuus Nova / Rosemeena Keshvani and that the money processed for P&T at Chase would be diverted to Defendants' insiders, Arcuus Nova and Rosemeena Keshvani. The diversion of P&T's funds occurred hundreds of times with each credit card transaction over the course of at least one week.

76.     Predicate acts are "related" for RICO purposes when they have the same or similar purposes, results, participants, victims, or methods of commission, or

---

[9] A RICO complaint need not be specific as to each allegation of fraud when the nature of the RICO scheme is sufficiently pled so as to give notice to each of the defendants where, as here, the sufficiency challenge precedes discovery. *See, e.g., Ifill v. West,* No. 96 Civ. 6308, 1999 WL 690144, at *4 (S.D.N.Y. Aug.24, 1999).

otherwise are interrelated by distinguishing characteristics and are not isolated events. The pattern element of a RICO claim is met here in that Defendants made misrepresentations prior to the theft as to the use of the Chase platform with a MID for P&T and in the running of hundreds if not thousands of credit card transactions through Defendants' Chase platform which diverted P&T's credit card sales to Defendants' insiders.

77.     On information and belief P&T is not Defendants' only victim and P&T is entitled to discovery related to other thefts committed by Defendants in the same or similar manner. P&T is informed and believes there are at least three other victims of Defendants' theft through credit card processing manipulations.

78.     P&T is informed and believes that ReThink is engaged in continued criminal activity as evidenced by its operating website and continued filings with the State of Delaware, the most recent of which was a filing on 3/27/2024 identified as a Blanket Change of Address of Corporation. Moreover, P&T alleges on information and belief that Defendants are engaged in an open-ended pattern of racketeering activity (*i.e.,* past criminal conduct coupled with a threat of future criminal conduct) and that discovery will disclose additional victims of Defendants' illegal activities. Here, the nature of the predicate acts themselves implies a threat of continued criminal activity. The threat of continuity continues because once the credit card transactions have been sent to Defendants, Defendants fully and completely control the funds. P&T is not the only victim of theft by false pretenses, larceny or embezzlement because of the nature of the business. Defendants operate primarily by committing theft by false pretenses, larceny or embezzlement, even if they also conduct some other legitimate business. Defendants use their MSB license as a basis for securing trust, confidence and assurance that merchants such as Plaintiff and their funds are safe by virtue of the fact that Defendants are licensed and thus regulated.

79.     Each Defendant played some role in the fraudulent scheme: ReThink issued the contract and established the processing platforms with Evolve and Chase; Keshvani signed the contract; Keshvani, Caffey and/or Roma established the

processing platforms with Evolve and Chase and made repeated assurances that the delay in Chase processing was "normal" and that it would be quickly resolved or that they would be working on resolving the issues. At the same time ReThink, Keshvani, Caffey, Roma, Arcuus Nova and Rosemeena Keshvani received and profited from P&T's funds which were obtained through the deception of P&T.

80.    P&T has been injured in its business or property by reason of a violation of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c).

81.    P&T is entitled by statute to treble damages, costs and attorney's fees. 18 USC §1964(c).

## FOURTH CAUSE OF ACTION
## <u>CONSTRUCTIVE FRAUD</u>

(Plaintiff against All Defendants and DOES 1 - 20)

82.    Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

83.    Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated,—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud. *In re Arbuckle's Est.* (1950) 98 Cal. App. 2d 562, 568.

84.    "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. California Fed. Bank* (2000) 82 Cal. App. 4th 399, 415.

85.    Defendants Rethink, Keshvani, Caffey, Roma misrepresented their intent to process all of P&T's submitted credit card transactions for the sole purpose of returning to P&T the funds generated by those transactions minus ReThink's fees.

86.    Defendants' intent to defraud is evidenced by the fact that Defendants had a preexisting arrangement with Keshvani's mother Rosemeena Keshvani and a

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

business entity, Arccus Nova, created or existing for the purpose of diverting P&T's transaction funds.

87. Defendants' intent to defraud is evidenced by the fact that Defendants moved the processing platform from Evolve to Chase without disclosing to P&T that the processing through Chase was not tagged to P&T under a MID specific to P&T. Defendants never told P&T that the MID of Arcuus Nova or Keshvani's mother Rosemeena Keshvani, or anyone other than P&T, would ever be involved. To the contrary, Defendants' representation was that the processing belonged to ReThink and the MID identified P&T.

88. Defendants' misrepresentations and concealments were made in late 2022 and 2023, extending through October, 2023 during which time Defendants continued to represent that ReThink intended to reconcile P&T's account while concealing the fact that P&T's funds had been diverted to Arcuus Nova and/or Keshvani's mother Rosemeena Keshvani.

89. What was misrepresented and/or concealed: Defendants pressured P&T to move its credit card traffic to Chase even before Evolve froze some of P&T's transactions. Defendants told P&T that its Processing Agreement with Chase was the same as with Evolve and that P&T's funds were secure with a MID specific to P&T and a Processing Agreement between ReThink and Chase. Defendants' representations were untrue and Defendants concealed from P&T that on the Chase platform P&T's submission of credit card transactions were processed in favor of Defendants' insiders, Arcuus Nova or Rosemeena Keshvani.

90. Nor have Defendants ever explained why Evolve would have frozen P&T's funds based on a transgression by "Empire". Based on the lack of a cogent explanation as to Evolve's freezing P&T's funds, P&T alleges that Evolve either never froze P&T's funds or that if it did, the processing stay was short and ReThink received the funds from Evolve and failed to tender same to Plaintiff based on false reasons created by ReThink to defraud Plaintiff.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

91.     At least as of the time that Defendants rerouted P&T's transactions from Evolve to Chase they knew that P&T's credit card transactions would be processed only for the benefit of Defendants. All of Defendants' representations from that time on were knowingly false and included but were not limited to the following: (1) that rerouting to the Chase platform for the processing of P&T's transactions was for P&T's benefit; (2) that with the Chase platform the processing would be performed as it had been at Evolve bank, for the benefit of P&T; and (3) that ReThink was working on returning P&T's funds from both Evolve and Chase.

92.     P&T relied on Defendants' representations which were given both verbally and in writing and based on the contract that had been signed with warranties provided. Moreover, some of the transactions had cleared and while never trouble free there was no reason not to rely on the verbal and written agreement that Defendants would ***not engage in any unfair, deceptive, or abusive acts or practices when providing the Payment Services***; …

93.     P&T could not have known that the purported "back up" bank, Chase, would never route processed funds to P&T because Defendants had set up the flow of money to themselves rather than to P&T. Also, by the time that Defendants told P&T to use the Chase platform Defendants were processing between $40,000 USD to $65,000 USD per day. That meant that by the time P&T became suspicious about what was going on, it was likely that Defendants would have stolen about a week's worth of P&T's money and indeed approximately 795,741.20 EUR was lost to Defendants before P&T realized what was happening.

94.     Despite initially engaging with P&T under the pretense that it was Chase that continued to error and failed to timely process transactions, Defendants never intended to return any substantial submission of transaction funds to P&T. Defendants engaged with P&T to delay P&T's discovery of the fraud because all along Defendants knew that they had set up the Chase processing transactions with a MID for Arcuus Nova or Rosemeena Keshvani, not for P&T. It was only P&T that did not know this important fact until its principal ran his credit card through P&T. But even after

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

learning this information it was not clear why Defendants had created the MID for Arcuus Nova or Rosemeena Keshvani or whether through banking error the MIDs had simply become confused. In a telephone conversation between Plaintiff's agents, a third party facilitator and Defendant Keshvani, Keshvani assured Plaintiff that the rerouting of the funds away from P&T was a bank error that would be looked into.

95.     Despite continuing problems and issues Defendants continued to induce P&T's reliance on their systems, telling P&T that the problems would shortly be resolved, that the issues were temporary, that Defendants were working with the banks and a myriad of other excuses for why the transactions were not fullyreturning P&T's money.

96.     As a result of the fraudulent conduct of Defendants, P&T has been harmed in a sum to be proven at trial.

97.     Defendants' acts were malicious, oppressive and fraudulent carried out with conscious disregard for the rights and safety of P&T. As such, punitive damage must be imposed against Defendants.

**FIFTH CAUSE OF ACTION**

**<u>CONVERSION</u>**

(Plaintiff against All Defendants and DOES 1-20)

98.     Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

99.     The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. *Regent All. Ltd. v. Rabizadeh* (2014) 231 Cal. App. 4th 1177, 1181.

100.   P&T owned the credit card transactions it submitted to Defendants for processing and transmitting the credit card transactions to ReThink did not transmute ownership. Transfer was for the limited purpose of processing the transactions.

101.   Defendants were required to process the credit card transactions such that the funds flowing from the transactions were transmitted to P&T after processing, minus Defendant ReThink's fees.

102.   Inconsistent with P&T's property rights to the funds resulting from approximately 795,741.20 EUR of credit card transactions transmitted to the Defendants for processing, the funds stemming from said transactions were never returned to P&T. Instead, Defendants retained the funds and exercised dominion over the funds interfering with P&T's right of possession and ownership.

103.   P&T was damaged as a result of the conversion of approximately 795,741.20 EUR by Defendants.

104.   P&T will seek a constructive trust to protect said funds.

105.   The amount of damages will be subject to proof at the time of trial.

106.   Defendants' acts were malicious, oppressive and fraudulent carried out with conscious disregard for the rights and safety of P&T. As such, punitive damage must be imposed against Defendants.

107.   Plaintiff will seek Attorney's Fees as authorized by law.

## SIXTH CAUSE OF ACTION
## <u>NEGLIGENCE</u>
(Plaintiff against all Defendants and DOES 5-10)

108.   Plaintiff hereby incorporates herein by reference all paragraphs relevant to this cause of action and realleges same herein as though fully set forth.

109.   Defendants had a duty to process P&T's transactions for the benefit of P&T.

110.   Defendants breached their duty to P&T by failing to timely process P&T's transactions; by failing to process P&T's transactions for the benefit of P&T; and by failing to remit to P&T all funds from P&T's credit card transactions.

111.   As a proximate cause of their breach of duties owed to P&T, P&T has been damaged in sums to be proved at trial but not less than 795,741.20 EUR.

DRACUP & PATTERSON, INC.
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

# RELIEF SOUGHT

1.      For general and special damages as proven at trial;

2.      For injunctive relief and constructive trust and other equitable relief where appropriate;

3.      For punitive damages as determined at trial where appropriate;

4.      For Attorney's Fees where authorized by contract or statute;

5.      For Costs; and

6.      For other such relief as the Court deems proper.


Dated: June 14, 2024                          DRACUP & PATTERSON, INC.


                                        BY: _____
                                              *Sohaila Sagheb*

                                              Sohaila Sagheb, Esq.
                                              Attorneys for Plaintiff
                                              P&T Multimedia Services, LTD

**DRACUP & PATTERSON, INC.**
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535

**Request For Trial By Jury**

To the Honorable Court:

Plaintiff P&T MULTIMEDIA SERVICES, LTD hereby requests trial of this action by jury.


Dated: June 14, 2024                    DRACUP & PATTERSON, INC.


BY: _____
                                                *Sohaila Sagheb*

Sohaila Sagheb, Esq.
Attorneys for Plaintiff
P&T Multimedia Services, LTD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DRACUP & PATTERSON, INC.**
270 N. El Camino Real, Suite 510
Encinitas, CA 92024
Tel: (949) 309-1535